**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

    No. 97-5058

RONALD DEWAYNE PERKINS,

    Defendant-Appellant,

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 96-CR-148-K)

---

Submitted on the Briefs:

William E. Hughes, Tulsa, Oklahoma, for Defendant-Appellant.

Stephen C. Lewis, United States Attorney, and Thomas Scott Woodward, First Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Ronald DeWayne Perkins, who was indicted along with four others, pled guilty to one count of conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, and one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). He was sentenced pursuant to the United States Sentencing Guidelines ("U.S.S.G.") to 121 months imprisonment. Mr. Perkins appeals his sentence, and we affirm.[1]

I.

On September 18, 1996, co-defendants entered the Liberty Bank and Trust Company in Tulsa, Oklahoma. Upon entry, one co-defendant simultaneously disarmed the security guard and assaulted him by striking him in the head with a firearm. He then held the firearm to the security guard's head as the other co-defendants vaulted the teller counter and took $9,657.00 in cash. Prior to leaving the bank, one co-defendant discharged his firearm into the floor. The presentence report indicated that the 63-year-old security guard sustained a head injury resulting in a "small laceration and bruising" that required medical attention costing $418.75. In addition, the security officer experienced continued neck and shoulder pain for which he sought chiropractic treatment.

---

[1]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.

In sentencing Mr. Perkins, the district court increased the base offense of armed robbery by seven levels pursuant to U.S.S.G. § 2B3.1(b)(2)(A) for discharge of a firearm; by two levels pursuant to section 2B3.1(b)(3)(A) for bodily injury to the bank security guard; by two levels pursuant to section 2B3.1(b)(4)(B) for physically restraining the security guard by pointing a weapon at his head; and by one level pursuant to section 2B3.1(b)(5) for taking a firearm from the security guard. At sentencing, Mr. Perkins objected to the increases for physical restraint and taking a firearm on the ground that the cumulative enhancements for "weapon involvement and injury" exceeded 11 points in violation of U.S.S.G. § 2B3.1, Application Note 4. He further objected to the increase for bodily injury on the ground that the injury sustained by the security guard was not "significant" as required by section 2B3.1(b)(3)(A). Mr. Perkins reiterates these objections on appeal.

II.

Mr. Perkins initially argues all of the sentence enhancements imposed on him pursuant to section 2B3.1(b) amounted to increases for either "weapon involvement" or "injury", and that the resulting 12-level increase caused the total number of enhancements for "weapon involvement and injury" to exceed the 11-level maximum provided for by the guidelines. We review de novo the district

court's interpretation of the sentencing guidelines. See United States v. Roberts, 898 F.2d 1465, 1469 (10th Cir. 1990).

U.S.S.G. § 2B3.1(b)(2) outlines various enhancements a court should impose for the use of weapons in the commission of a robbery (e.g., discharging, brandishing, threatening or possessing a firearm). U.S.S.G. § 2B3.1(b)(3) outlines enhancements to be imposed for various types of injuries sustained by a victim, "*[p]rovided*, however, that the cumulative adjustments from (2) and (3) shall not exceed 11 levels." This limitation is reiterated in Application Note 4, which states: "The combined adjustments for weapon involvement and injury are limited to a maximum enhancement of 11 levels."

Although Mr. Perkins urges otherwise, Application Note 4 plainly refers to subsections (2) and (3) and not to enhancements imposed pursuant to other subsections of section 2B3.1(b). The Application Note serves only to describe what the guideline provisions require, not to impose additional limitations not contained within the text of the guidelines. The district court enhanced Mr. Perkins' sentence nine levels under sections 2B3.1(b)(2) and (3).[2] The court thus

---

[2] U.S.S.G. 2B3.1(b)(4) provides for enhancement for conduct *resulting* in physical restraint regardless of how the restraint is accomplished, while U.S.S.G. § 2B3.1(b)(5) comprises enhancements for various items that might be *taken* (as opposed to used) in the course of a robbery and is not limited to weapons. The district court added an additional three levels to Mr. Perkins' sentence under sections 2B3.1(b)(4) and (5).

did not impose excessive enhancements to Mr. Perkins' sentence for weapon involvement and injury in violation of the guidelines.

III.

Mr. Perkins next contends the district court erred in increasing his sentence by two levels for bodily injury sustained by the security guard because the guard's injury was not sufficiently "significant" within the meaning of the guidelines. The district court's determination of the significance of a bodily injury is a finding of fact we review for clear error. See United States v. Lanzi, 933 F.2d 824, 827 (10th Cir. 1991).

The sentencing guidelines define "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, comment. (n. 1(b)). "[T]o be 'significant' an injury need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period." United States v. Lancaster, 6 F.3d 208, 209 (4th Cir. 1993) (per curiam). Injuries that are "painful and obvious" but that do not require medical attention may nevertheless constitute "bodily injuries" justifying application of a sentence enhancement. See United States v. Hamm, 13 F.3d 1126, 1128 (7th Cir. 1994). Courts have held visible injuries such as bumps,

bruises, and redness or swelling to constitute "bodily injury." See id.; United States v. Greene, 964 F.2d 911, 912 (9th Cir. 1992) (per curiam).

Here the district court based its finding of bodily injury upon information in the presentence report indicating that the security guard sustained a "small laceration and bruising" and that he experienced continued neck and shoulder pain causing him to seek chiropractic treatment. We agree with Mr. Perkins that it is the actual nature of the *injury* sustained and not generalized statements concerning the nature of the conduct or the victim's age that must be the focus of the district court's determination. See United States v. Dodson, 109 F.3d 486, 489 (8th Cir. 1997); United States v. Harris, 44 F.3d 1206, 1217-18 (3d Cir. 1995); cf. United States v. Tissnolthtos, 115 F.3d 759, 762 (10th Cir. 1997) (statement of age without more not sufficient to justify vulnerable victim enhancement). Certainly it would have been helpful and prudent for the government to provide more detailed information concerning the medical treatment the security guard received. Nevertheless, because it is undisputed that the guard sustained visible and lingering injuries of a type courts have found to constitute "bodily injury," we cannot conclude the district court committed clear error in increasing Mr. Perkins' sentence. See Hamm, 13 F.3d at 1128 (enhancement for bodily injury warranted where victim suffered bumps and bruises and had "wind knocked out of him").

We **AFFIRM.**