United States Court of Appeals
Fifth Circuit

**F I L E D**

June 4, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30607

UNITED STATES OF AMERICA

       Plaintiff - Appellee

v.

PERRY J LISTER; MARK BARNES; ROBERT E HILL; BORIS G BYNUM; KALUB
DOYLE, JR

       Defendants - Appellants

--------------------
Appeals from the United States District Court
for the Western District of Louisiana, Lake Charles Division
USDC No. 2:04-CR-20127-2
--------------------

Before KING, DEMOSS and OWEN, Circuit Judges.

PER CURIAM:[*]

Following a bench trial, the district court convicted defendants-appellants Mark Barnes, Perry J. Lister, Kalub Doyle Jr., Boris Bynum, and Robert E. Hill on one count of aiding and abetting each other in the commission of an assault with a dangerous weapon in violation of 18 U.S.C. §§ 2 and 113(a)(3). On appeal, Barnes, Lister, Bynum, and Hill challenge their convictions based on sufficiency of the evidence. Lister also challenges his sentence and argues that the district court erred by denying him the opportunity to allocute. Doyle challenges his

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence as well, arguing that the district court erroneously applied a bodily injury enhancement.  For the reasons that follow, we AFFIRM each conviction and the sentences imposed on Barnes, Bynum, Hill and Doyle, VACATE Lister's sentence, and REMAND for resentencing as to Lister.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In December 2003, the five defendants-appellants, Mark Barnes, Perry J. Lister, Kalub Doyle, Jr., Boris Bynum, and Robert E. Hill (collectively the "defendants"), and the victim, Treacy Robbins, were all incarcerated in a federal correctional facility in Oakdale, Louisiana.  At the time of the assault at issue in this appeal, Robbins and Lister shared a cell.

On the evening of December 14, 2003, an altercation occurred in Robbins and Lister's cell.  Several inmates gathered to watch the incident, including Lewis Bussie and Kevin Henderson, who later became government witnesses.  Robbins testified that he was assaulted by the five defendants and that although Lister and Barnes initiated the attack, the other three joined in, kicking and hitting him all over his body.  Robbins also testified that Barnes and Hill swung at him with combination locks attached to belts, hitting him with these contraptions on both the body and head.  Bussie's testimony corroborated this account.  At one point Robbins crawled under the bed to protect himself. Henderson testified that in an attempt to draw Robbins out from under the bed, Doyle grabbed Robbins and brandished a knife. Henderson described the knife as having a black or brown handle and a white shoe string attached.  The altercation lasted between

two to four minutes and ended when an observer, possibly Henderson, yelled, "Police coming." Then all five defendants, including Lister, left the cell.

Robbins testified that although he did not lose consciousness, the assault left him dizzy, bruised, scratched, and bleeding from his nose and mouth. Robbins cleaned himself up after the assault but refrained from immediately reporting the assault because he wanted to seek revenge on his attackers the next day. Robbins reported for work at his prison job the morning after the attack, but because his dizziness persisted, he sought medical assistance at the prison infirmary shortly thereafter. The treating physician's assistant noted that Robbins's body had numerous scratches, bruises, lumps, and bumps, but no broken bones or stab wounds. Robbins also complained of ankle pain, ear pain, and fluid in his ear. Once Robbins sought medical assistance, the assault was reported to the prison authorities.

The defendants were moved to a special housing unit after the attack was reported. When packing Doyle's property for the move to that unit, a correctional officer uncovered two nine-inch homemade knives in Doyle's mattress.

Following a bench trial, the district court convicted the defendants of one count of aiding and abetting each other in the commission of an assault with a dangerous weapon in violation of 18 U.S.C. §§ 2 and 113(a)(3).

A pre-sentence investigation report ("PSR") was issued for each co-defendant, based on the November 1, 2004 version of the

United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").

Because only Doyle challenges the sentencing calculation in the

PSR on appeal, we include the details as to his PSR only.  The

PSR calculated Doyle's base offense level at 24, which included a

three-level enhancement pursuant to U.S.S.G. § 2A2.2(b)(3)(A)

because Robbins sustained bodily injury as a result of the

beating.  The PSR also calculated Doyle's criminal history

category as VI.  Doyle's advisory guideline range, as calculated

by the PSR, was thus 100-125 months.  Doyle made several

objections to the PSR, only one of which is at issue on

appeal—that the three-level enhancement provided in § 2A2.2(b)(3)

for bodily injury was not applicable because Robbins did not

sustain a significant injury during the assault.

On June 2, 2005, the district court sentenced Lister to

eighty months' imprisonment to be followed by three years'

supervised release.  Barnes was sentenced to 110 months'

imprisonment and three years' supervised release.  Bynum was

sentenced to forty-six months' imprisonment to be followed by

three years' supervised release.  Hill was sentenced to forty-

eight months' imprisonment to be followed by three years'

supervised release.  On July 12, 2005, Doyle was sentenced to 100

months' imprisonment and three years' supervised release.  All

sentences were to be served consecutive to any undischarged term

of imprisonment.  The defendants now appeal.

## II. SUFFICIENCY OF THE EVIDENCE

Barnes, Lister, Bynum, and Hill argue that the district

court erred in denying their motions for a judgment of acquittal

because there was insufficient evidence from which a rational fact finder could have found them guilty beyond a reasonable doubt of assaulting Robbins with dangerous weapons. We review a challenge to the sufficiency of the evidence after a bench trial "in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court." United States v. Ybarra, 70 F.3d 362, 364 (5th Cir. 1995). Evidence is sufficient to sustain a conviction if "substantial evidence supports the finding of guilty." Id. In other words, we affirm the conviction if "the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty." Id. The district court as fact finder makes all credibility determinations and resolves conflicting testimony. United States v. Jennings, 726 F.2d 189, 190 (5th Cir. 1984).

To convict a defendant of a violation of 18 U.S.C. § 113(a)(3), the government must establish that the defendant (1) committed an assault against the victim, (2) with a dangerous weapon, (3) with the intent to do bodily harm. 18 U.S.C. § 113(a)(3); see also United States v. Estrada-Fernandez, 150 F.3d 491, 494 (5th Cir. 1998). To prove that a defendant aided and abetted a criminal venture in violation of 18 U.S.C. § 2, the government must show that the defendant: "(1) associated with the criminal enterprise; (2) participated in the venture; [and] (3) sought by his action to make the venture succeed." United States v. Tenorio, 360 F.3d 491, 495 (5th Cir. 2004). A defendant has associated with the criminal enterprise once he has

"'shared in the criminal intent of the principal.'" <u>United States v. Sorrells</u>, 145 F.3d 744, 753 (5th Cir. 1998) (quoting <u>United States v. Salazar</u>, 66 F.3d 723, 729 (5th Cir. 1995)). A defendant has participated when he "'engaged in some affirmative conduct designed to aid the venture. Although relevant, mere presence and association are insufficient to sustain a conviction of aiding and abetting.'" <u>Id.</u>

The defendants'[1] arguments mostly revolve around inconsistencies in testimony among the numerous witnesses and the witnesses' alleged credibility problems. They insist that because the eyewitnesses had criminal records, were Robbins's friends, and had inconsistencies in their testimony, a rational fact finder could not have found the defendants guilty beyond a reasonable doubt. Despite the inconsistencies in the evidence noted by the defendants, three witnesses (Robbins, Bussie, and Henderson) identified the defendants as having participated in the assault in one way or another. The trial judge, as the arbiter of credibility, did not err by crediting these witnesses' testimony and finding that the defendants participated in the assault.

Because § 113 does not define what constitutes an "assault," we use the common-law definitions of both criminal and tortious assault when interpreting the statute. <u>Estrada-Fernandez</u>, 150 F.3d at 494 n.1; <u>see also United States v. Guilbert</u>, 692 F.2d

---

[1] We recognize that Doyle does not contest the sufficiency of the evidence, but for the sake of convenience, we refer to Lister, Bynum, Hill, and Barnes as the defendants in this section.

1340, 1343 (11th Cir. 1982).  Accordingly, to establish that a defendant committed "assault," the government must show that (1) the defendant attempted to commit a battery on the victim, or (2) the defendant put the victim in reasonable apprehension of immediate bodily harm.  Guilbert, 692 F.2d at 1343.  Based on the testimony of Robbins, Bussie, and Henderson, the trial judge could have rationally concluded that each of the defendants committed an assault in any or all of the following ways: (1) by attempting a battery on Robbins, (2) by completing a battery on Robbins, or (3) by placing Robbins in reasonable apprehension of immediate bodily harm.

The second element of proof required is that the assault be committed with a dangerous weapon.  § 113(a)(3).  "The determination whether an object constitutes a 'dangerous weapon' turns not on the object's latent capability alone, but also on the manner in which the object was used."  Guilbert, 692 F.2d at 1343; see also United States v. Gholston, 932 F.2d 904, 904 (11th Cir. 1991).  Trial testimony indicated that Barnes and Hill had weapons fashioned with locks and belts and that Doyle drew a knife.  Prison authorities discovered two homemade knives hidden in Doyle's mattress.  These knives matched Henderson's detailed description of the knife he saw used in the attack.  An investigative agent at the Oakdale facility testified that combination locks were common in the prison and could easily be obtained.  This is sufficient evidence from which the trial judge could have concluded beyond a reasonable doubt that a weapon was used in the assault and that the objects were used in a dangerous

manner. Although Lister and Bynum argue that the evidence was not sufficient as to them because there was no evidence that they personally used any weapons against Robbins, it is not necessary for Lister and Bynum to have personally used weapons to find them guilty of aiding and abetting. See United States v. Vasquez, 953 F.2d 176, 183 (5th Cir. 1992) (recognizing that a defendant need not commit all elements of the substantive underlying offense as long as he aided and abetted each element). The government only needed to show, which it did, that they deliberately associated with the criminal venture, participated in it, and sought by their actions to make it succeed. See United States v. Freeman, 434 F.3d 369, 377 (5th Cir. 2005).

The third element required for conviction is that the assault be committed with the intent to do bodily harm. Intent may be "judged objectively from the visible conduct of the actor and what one in the position of the victim might reasonably conclude." Shaffer v. United States, 308 F.2d 654, 655 (5th Cir. 1962). From several witnesses' accounts of the defendants' conduct during the assault, a rational fact finder could have concluded that the defendants intended to do Robbins bodily harm.

The district court did not err in denying the defendants' motion for judgment of acquittal. The evidence is sufficient to support their convictions under § 113(a)(3).

### III. RULE 32 VIOLATION

Lister argues that the district court violated Federal Rule of Criminal Procedure 32 by denying him an opportunity to allocute before his sentence was pronounced and that he is

entitled to a remand for resentencing.  Because Lister did not object to the district court's failure to allow full allocution at his sentencing hearing, we review his claim for plain error only.  United States v. Reyna, 358 F.3d 344, 350 (5th Cir. 2004) (en banc).  Under the plain error standard of review, we ask whether the district court committed an "error that is 'plain' and that 'affect[ed] substantial rights.'" United States v. Olano, 507 U.S. 725, 732 (1993).  To show that an error affected his substantial rights, a defendant must establish that the error was prejudicial, i.e., that it "affected the outcome of the district court proceedings."  Id. at 734.  Once those criteria are met, we, in our discretion, may correct the forfeited error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"  Reyna, 358 F.3d at 350 (quoting Olano, 507 U.S. at 732).  We must "conduct a thorough review of the record to determine if we should exercise our discretion to correct the error."  Id. at 353.

The right of allocution requires that the district court "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."  FED. R. CRIM. P. 32(i)(4)(A)(ii).  The government concedes that the district court plainly erred and admits that prejudice is presumed because the district court sentenced Lister in the middle, rather than the bottom, of the appropriate advisory guidelines range.  See Reyna, 358 F.3d at 353 (holding that prejudice will be presumed from the denial of an opportunity to allocute when the defendant is not sentenced at the bottom of

the applicable guidelines range).

Ordinarily we remand a case for resentencing when the opportunity to allocute has been denied and prejudice results, but we have declined to create a blanket rule to that effect.[2] Id. at 352-53. "In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not violate the last [prong of plain error review]", that is, that the error does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." Id. at 352. The government contends that the instant case falls within that limited class.

In United States v. Reyna, we declined to exercise our discretion to correct the district court's plain error in failing to give the defendant an opportunity to allocute, relying heavily on the facts of that particular case. Id. at 353. Reyna involved the defendant's third appearance before the same district judge, his second for violations of his supervised release. Id. at 352. At the sentencing hearing for the first violation of his release, the judge clearly warned the defendant of the consequences for any subsequent violation of his supervised release. Id. at 353. The record indicated that the defendant understood what would happen to him should he again violate his supervised release, and the district court clearly

---

[2] The right to allocution "is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure." United States v. Reyna, 358 F.3d 344, 349 (5th Cir. 2004).

gave the defendant an opportunity to allocute at both his original sentencing and also when he was resentenced following his first violation of supervised release. Id. When the defendant again violated the terms of supervised release, the district court sentenced him exactly as it warned him it would. Id. Based on those facts, we held that the error, though prejudicial, did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. The instant case is distinguishable from Reyna, however. Unlike the situation in Reyna, this was Lister's original sentencing, and Lister did not have previous opportunities to allocute.

In United States v. Magwood, we declined to extend our discretion to correct similar error because on appeal the defendant did not specifically state what he would have allocuted to had he been given the opportunity. 445 F.3d 826, 830 (5th Cir. 2006). But in this case, Lister identifies in his brief what he would have included in an allocution statement.

Accordingly, we hold that this case does not fall within that limited class of cases in which the "fairness, integrity or public reputation of judicial proceedings" has not been seriously affected. We vacate Lister's sentence and remand for resentencing.

## IV. SENTENCING ENHANCEMENT

Doyle's sole argument on appeal is that the district court improperly enhanced his sentence pursuant to U.S.S.G. § 2A2.2(b)(3)(A) based on its finding that Robbins sustained "bodily injury" as a result of the assault. We review the

district court's interpretation and application of the Guidelines de novo. United States v. Medina-Anicacio, 325 F.3d 638, 643 (5th Cir. 2003). The court's factual findings with respect to sentencing are reviewed for clear error. United States v. Rodriguez-Mesa, 443 F.3d 397, 401 (5th Cir. 2006). Clear error does not exist "if the district court's finding is plausible in light of the record as a whole." United States v. Edwards, 303 F.3d 606, 645 (5th Cir. 2002) (quoting United States v. Humphrey, 104 F.3d 65, 71 (5th Cir. 1997)).

Section 2A2.2(b)(3)(A) provides for a three-level increase in the offense level if the victim sustained "bodily injury" as a result of the assault. U.S. SENTENCING GUIDELINES MANUAL § 2A2.2(b)(3)(A) (2004). The injury sustained, not the actions of the defendant, should be the focus of the inquiry. United States v. Guerrero, 169 F.3d 933, 946 (5th Cir. 1999). "Bodily injury" includes "any significant injury, e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. n.1(B) (2004). The term "significant injury" is open-ended and cannot be exactly defined. See United States v. Lancaster, 6 F.3d 208, 210 (4th Cir. 1993).

> Rather, it should be determined by a very factually-specific inquiry which takes into account a multitude of factors, some articulable and some more intangible, that are observable in hearing the evidence presented on the injury. Because the district court hears this evidence, it is by far best-suited to assess these myriad factors and determine whether a 'significant injury' has occurred.

Id. Accordingly, the district court's determination concerning

whether Robbins sustained bodily injury within the meaning of § 2A2.2 is a factual finding, reviewable under a clear error standard. See United States v. Isaacs, 947 F.2d 112, 114 (4th Cir. 1991).

Doyle specifically complains that the cuts and bruises sustained by Robbins do not constitute "bodily injury." The physician's assistant testified that Robbins had numerous scratches, bruises, lumps, and bumps after the assault and that Robbins complained of pain in his ankle. Photographs admitted into evidence at trial support this testimony and show scratches and bruises on Robbins's back, shoulder, and near his ear. Further, Robbins testified that the bruises, cuts, swelling, and dizziness persisted for several hours, and eventually led him to seek medical treatment from the prison infirmary on two separate occasions.

Other circuits have found that similar injuries constitute bodily injury. In United States v. Greene, the Ninth Circuit found bodily injury was "obvious" where a slap in the face caused swelling and pain. 964 F.2d 911, 911-12 (9th Cir. 1992). Similarly, in United States v. Perkins, the Tenth Circuit found bodily injury where the defendant knocked the breath out of the victim and caused a small laceration, pain, and bruising during a robbery. 132 F.3d 1324, 1325 (10th Cir. 1997); cf. Guerrero, 169 F.3d at 947 (vacating the defendant's sentence because even though the defendant struck the victim, there was no evidence of any "bruising, swelling, or any other type of injury.").

As support for his argument that the enhancement was

improper, Doyle notes that Robbins did not immediately seek medical attention after the assault and that the physician's assistant described Robbins's injuries as "superficial." Because "[c]ourts have found that 'painful and obvious' injuries constitute 'bodily injuries' even if the victim does not seek medical attention," Robbins's delay in seeking treatment does not necessarily support vacating his sentence. See United States v. Hamm, 13 F.3d 1126, 1128 (7th Cir. 1994). Nor does the physician's assistant's characterization of the injuries as "superficial" remove them from the "painful and obvious" category. The physician's assistant testified that by "superficial" she meant only that the injuries were to soft tissue, rather than bones.

Given the evidence in the record regarding Robbins's injuries, the district court's finding that Robbins suffered bodily injury was not clearly erroneous. Accordingly, the district court properly enhanced Doyle's sentence pursuant to § 2A2.2(b)(3)(A).

## V. CONCLUSION

For the reasons stated, we AFFIRM each conviction and the sentences imposed on Doyle, Hill, Barnes, and Bynum, VACATE Lister's sentence, and REMAND for resentencing as to Lister.